May it please the court, Shane Cohen is asking this court to reverse the order of the district court upholding the search that occurred in this case and asking that it be remanded with instructions that the motion to suppress be granted. This was a bad search. The cases are fairly clear on what the inquiry, not fairly clear, they are clear on what the inquiry is here. We look at the factors, we look at the factors in their totality and we would submit that in their totality this Detective Beckwith did not have reasonable suspicion to prolong the stop and certainly did not have reasonable suspicion at the point that the stop ended to you know continue to detain Mr. Cohen and for the purposes of searching the car. When he patted him down, felt a bag of heroin, would that change your mind? Your Honor the government and we don't disagree on much in this case but we really do about the search. I understand but I just want that one question, I want to know if during a pat down, if during the pat down he felt a bag of cocaine in there, would the officer have reasonable suspicion? In the context of this case no but in general. Any person who has cocaine probably has probable cause to arrest. If he can tell it's a bag of cocaine. He suspected it's a bag of cocaine in there and he can't be certainly sure but all we need is a reasonable suspicion, articulable suspicion and he concludes that it's a bag of cocaine packaged in a bag there and I was trying to focus on whether you're challenging the blunt rappers as legitimately considered to be drug paraphernalia. Thank you. That's one issue at that point. The second issue is whether there was consent when he got out of the car and raised his hands and it seems to me those two events sort of shape one issue in this case and that's whether he had reasonable suspicion to attend. The other question is really the barrier question is that even if it's just an driver's license it's extended by a couple minutes when the news comes in that he is a warrant for his arrest whether that implicates the Fourth Amendment. Those are the two issues for my purposes that I think need to be addressed most. Okay well yes sir okay so with respect and to try to answer your question directly about the blunt raps our position of course is no feeling blunt raps or cigars whichever they are it's not really clear from the record whichever they are it's a legal product it does not in this case. I can't tell you how many cases we see up here with blunt raps. That's the way marijuana is smoked often. How about tell me what a blunt is. The best definition I could find was that it was a hollowed out cigar but I don't know if that's just tell me what it is. I'm not sure there's a brand of cigar that you could buy at any convenience store which perhaps is what Mr. Cohen did in this case when he pulled into the convenience store called Philly's blunts and they are cigars. I went the government just the rapper apparently. Beckwith says two different things. Beckwith says they're cigars and he says they're marijuana. This is not in the record obviously but I got on the internet I googled blunt raps and it takes you to tobacco sites. Well it is because the blunt rap is tobacco but to have us if you're smoking cigars you're never going to have a wrap you're going to buy a whole cigar. The blunt rap is the large leaves that are used to wrap and you stick the marijuana inside the and so that's what the officer said I've never seen blunt wraps except in connection with marijuana. Yes that is what he said. So am I correct that it's a hollowed out for lack of a better term cigar. I'm not sure your honor because again there are you can buy something called Philly's blunts which are cigars which are which have tobacco in them. So it's not clear from the and I think also in his testimony at the suppression hearing he says both cigars and blunt wraps. But you know so our position is that that he's in possession of a legal product that by itself cannot rise to reasonable suspicion that he is in possession. You go into a house and you see scales on the kitchen table that's legal. But in the context officers always often conclude that that's indicative of drug paraphernalia because of the context in which they find it. So I'm not sure that answers the question. It seems to me as we would look as to whether a reasonable officer in this man's position and in the context would conclude that blunt wrap was being used for drugs. Well if you conclude that then this case is going to hold that nervousness combined with possession of a blunt wrap is a reasonable suspicion. Well because at that point admission that he smoked marijuana at that point in the stop that's all Beckwith has. He also said he'd been arrested for arrested arrested for marijuana possession. Yes yes yes and we're in a drug area where the officer said this was a common area where I would briefly like to talk about the consent part of it because I think that's very important. Was that challenged in the motion to suppress? My understanding was the motion to suppress only addressed what occurred after the traffic stop was concluded. That's correct but the magistrate judge found that it was an illegal. But that wasn't challenged by the defendant. It was challenged by the government. It was not challenged. It was challenged by the government. Not challenged by the defendant in his motion to suppress. Yes yes but what I would like to say to that is if you look at the record in Beckwith's narrative of the stop and also in his written report of the stop and the district court's order it is referred to that Beckwith asked Mr. Cohen if he could search him for a weapon. So that if arguendo Mr. Cohen consented to a search by going like that he's saying you can search me for a weapon. All right and for and for Beckwith then to go beyond that is going beyond the scope of consent and we would argue for that reason the search fails as well. But again in the total yes sir. How do you know he wasn't searching for a weapon? That's a pat down. He can legally ask the passenger or the driver to exit the vehicle. For his safety yes he can. And at that point wouldn't it be natural for an officer if he's going to do it for his safety to pat down for a gun? But he certainly had no reason to believe either a cigar or a blunt rap especially a rap would be a weapon. He did but but but he had no basis I mean that that could have been for for a plain feel there there's no indication that that's anything what what it what it shows is it's not a gun. I mean yes he has to ignore everything anything else he discovers during the pat down even though he's searching for a gun but finds some contraband he has to ignore that. I would say if he feels something that is a rapper it couldn't possibly be a weapon. Well that's the secondary question whether that's what I was asking originally whether the officer could reasonably believe that this was drug paraphernalia and but let's assume it clear it's drug paraphernalia something else and he's patting down for guns and he finds drug paraphernalia. Officer can rely on that can't he? I would say he could yes but but but but again I would I would think wrapping papers would be pushing it yes okay. So you know in our our position simply is that in this case the combination of factors are very very weak alone and certainly in combination. He was in a high crime neighborhood no he drove into what was a high crime area according to Beckwith. He made a right turn into it he made a left turn he stopped at a gas station he was there for a minute he pulls back on the highway 117 there's nothing in the record indicating that's a high crime area so he goes into it he comes right back out of it. Of course he's under investigation by Beckwith at that point I mean Beckwith is investigating him before the stop even happens in this case because Beckwith pulls over and observes Mr. Cohen while he while he's in the gas station. The nervousness in this case I think is very understandable given Beckwith's actions if anything escalated in this case it is not Mr. Cohen's nervousness it is Detective Beckwith's actions. He pulls Mr. Cohen over presumably tells him presumably tells him do you know why I stopped you for following too close takes his license back to the car. In his written report he says he tells him before he takes the license back that he's only going to give him a warning citation so he goes back to the car Mr. Cohen is sitting in the car he comes back and tells him to get out of the car. So what's going through Mr. Cohen's mind at that point? No one's going to tell him to get out of the car. No wonder Mr. Cohen became upset what's going on here why are you doing this? I thought you pulled me over for following too close you told me you're going to give me a warning ticket now you're telling me to get out of the car. He then tells him to get in the patrol car and Detective Beckwith is wondering why when he tries to engage him in conversation about the North Carolina Tar Heels that Mr. Cohen remains nervous. I think anybody would remain nervous in that situation. I myself I've accumulated a couple of tickets in my time I've never been asked to get out of the car. Are you still practicing law? I am I am I am uh uh yeah I've never been asked to get out of the car I certainly have never been asked to get into a patrol car um and and again that is what is emphasized by Beckwith throughout this. Beckwith says from the very beginning I wanted to find out what was going on with this guy because he seemed nervous um and not to try to repeat an argument that was made in the Vaughn case but but really to affirm this search to uphold this search uh this court has never held that nervousness by itself is sufficient. Here's my problem. Yes sir. I I've had this problem ever since I got on this court and it's nobody's fault I guess but my own when you have a different judge conducting the evidentiary hearing has happened in this case. Magistrate judge is sitting there watching the officer assessing demeanor and rules in your favor and then the case goes before a district judge who I guess is doing exactly the same thing the three of us are doing here today right? Looking at the cold record. Looking at the cold record and the district judge pulls this finding of consent out of the record made before the magistrate judge I just don't know how I can touch it. All this talk about reasonable suspicion is really beside the point isn't it? The district judge made a finding of consent here. Consent to the to the search it up a terry pat down according to the district court as I read the record it was a consent to a search. To a search of the car? There was search of the person. Of the person yes. Yeah. Yes sir. So it doesn't matter if I'm right and maybe I'm not it doesn't matter whether the blunt felt like a weapon or what is a blunt I mean I'm missing something what am I missing? Well again our yeah our primary argument is that the magistrate judge got it right there was no we're reviewing the district court. Yes. And how how do we how do we do that? We're not reviewing the magistrate judge right? Correct your honor. So how do we how do we say the district court was clearly erroneous? If I mean the law clearly permits the district court to make findings of fact including credibility of the officer without ever seeing having seen the officer testify. Yes sir. I'm sorry. No go ahead go ahead Jeff. Is the evidence contested? The any contrary evidence? I think I think the the dispute uh uh Mr. Rogers may disagree with me on this but I think the dispute evidentiary evidentiary wise is whether there was consent to a search or whether the search is good. Which is a legal conclusion based on the facts but the facts aren't contested. I think in terms of what happened yes I don't think we're disputing. Right there. Right um and and and Judge Davis not that not that I want to defend the district court but but but but again the the magistrate judge did determine that both both um uh Beckwith and Ward were credible. So I I believe that would be the district court's basis to say uh they're credible witnesses even without hearing. Didn't the district court draw an inference of consent? Are you saying that the magistrate judge also drew a an inference of of knowing consent to the search? No the magistrate judge did not. Exactly but the district court did. Yes. Was that permissible? The district court disagreed that that this uh was not an invitation to go ahead and search his entire. More than an invitation the district said it was a consent. Yes. Well we have two cases that say that don't we? Exactly. So I mean legally if somebody's about uh whether you can you have anything on you can check uh and the guy goes like this don't we have two cases to say that's implied consent? Implied consent yes. But but that is a matter of law because the magistrate judge says it wasn't. Yes. Didn't the magistrate so it's not a matter of law consent it's it's a legal conclusion based on facts and here it's an inferential fact. I mean don't you agree? I. Whether whether his raising his arms was an expression of consent is a factual determination. Some judges hearing this officer's testimony taking the totality of the circumstances might say yes some might say no. But ultimately it's the district judge's call here isn't it? Not the magistrate judge's call. Well again and my time is up. Yeah. May I answer the question? Sure. If if the court is going to find consent I would just say one thing about that. These these search cases talk about how you you have to take the context in which everything happens and I would simply ask the court to do that in this case. He asked him can I search you for a weapon? So if you're going to find that he consented to anything he consented to a search for a weapon. And and if uh there are no further questions I will. You've got some time reserved. Let's hear from Mr. Rogers. Good morning may it please the court my name is Joshua Rogers and I represent the United States. The officers who discovered the contraband and defendants vehicle acted upon a reasonable suspicion when they extended the search of his vehicle or extended the stop by two minutes and in doing so the district court was correct in holding that they did not violate the fourth amendment. First of all with respect to the duration question defendant concedes that the stop was justified at its inception and that's important because it's essentially uncontested that the officers were entitled to investigate the stop in accordance with D.G. O'Bonnie. Yeah I'm really confused. Is this an extension of the stop case or is this fresh reasonable suspicion case? Well the defendant makes the argument that the duration was unreasonable and he also makes the argument that there was not reasonable suspicion so we're addressing. What do you say? We say first of all that there was not an unreasonable duration because it was two minutes past the point that the stop concluded. You don't contend that there was fresh reasonable suspicion? After the point at which the officer issued the ticket? Yes. There was plenty of reasonable suspicion at that point. The officer had all they need to call the canine. That's not your principal argument. Our principal argument is that. Is duration. Not duration and reasonable suspicion. I mean they go hand in hand. It's a Terry argument that the defendant's making. No I'm asking what is the government's theory here? Our theory is is that the officers had to stop two additional minutes to call the canine. I'm sorry you don't need reasonable suspicion to extend a stop. If you have reasonable suspicion you can make a new stop. You can make a new detention and that's what I'm trying to just just clarify. Well do you can see that the traffic stop ended? We can see that the traffic stop ended when the officer said have a nice day. Have a nice day. So at that point I guess your theory is you have two separate theories. One is that it wasn't a new detention. It was a continuation of the traffic stop even though the traffic stop had been concluded. The two minute rule. Yes your honor. Right. The two minute offense and then I guess the other theory is that actually at that point have a nice day but the officer had reasonable suspicion to is that I mean I want to make your argument for you. I'm just trying to understand because this is very muddled in my mind. And it is it's in some ways difficult but in part because of the way the defendant has made the arguments that this that the duration was too long. You keep saying the defendant makes the argument. The burden is on you the government right to prove the validity of a search that is conducted without a warrant right. You agree with that? Yes your honor. Okay so what is your theory as to why this warrantless search was permissible? The officers had reasonable suspicion to call a K-9 unit based upon what they learned in the initial stop. So there was an initial stop. Okay that's what I thought you were saying. So there was an initial stop of the vehicle sort of a classic traffic stop during which he consented and in the words of the district court he actually invited the officer to search him. And part of what creates the confusion is that the initial stop in some ways has uh you know it feels like it ends this when the second background check comes back because it's part of the first stop at which point defendant is arrested. Now you're saying it's part of a first stop. No I'm not. I'm saying that it is contributes to the feeling confusion where you're like where exactly does this end? I mean it ends we conceded below and we say it today it ended when he said have a nice day. Defendant was saying that having to wait that additional amount of time was unreasonable. We're saying it's two minutes. You didn't have to I mean that's a minimum amount of time but either way the officer had reasonable suspicion to call a K-9 and begin an investigation into drug activity when at first he had only been investigating a defendant who was following too closely. All right I thought that's what the government's position was and I appreciate your articulating it with that clarity. It is worth noting that we wouldn't even be having this discussion if the officer had simply waited until the second check had come back. That's just as a practical point. Under D. Giovanni he had the right to wait for that but the officer just moved forward wrote the ticket and at that point there was a two-minute wait and then the arrest warrant came back. With respect to reasonable suspicion there were a number of different indicators that wove together to create the fabric of reasonable suspicion that included being in a drug trafficking area which we know that because Officer Ward testified to the fact that there had been a number of other undercover operations in the neighborhood and she dealt with a lot of individuals in the area with narcotics violations. There was also the nervousness of the defendant which stands out in particular to this officer as he mentioned in his testimony because the defendant had been told you're just getting a warning yet that doesn't calm the defendant down which tells this officer there's something more this defendant is concerned about than a ticket. He also almost immediately admits he's got a criminal record. The officer's assurances don't help him and as the court noted before there are blunt wraps on the defendant's record. Tell me what those are. Well in the record the officer testified they were asked the judge had the same question or I'm sorry the AUSA she asked can you please describe for the court and your experience with blunt wrappers what is their typical use and he's describing blunt wrappers and he asked she asked what is it can you tell me what they are he says yeah they're not actually they're like blunt wraps that you might roll tobacco with and she says I don't know what that is and he replies it's like tobacco paper but it's like cigar paper okay we understand that's not perfectly clear if the court would like I can proffer I spoke with the AUSA and ask and I'd be happy to proffer for the court what it was and it was in fact like empty cigar wrappers they were rolled it's you see how this kind of what's the what's officer feeling when he is patting this person down I mean I think something that feels more like a candy cane and something that feels felt to him and that's in the yes sir that's in the record so I spoke with the AUSA and it's something that is a hollow candy can feeling object that's like a cylinder and not start with cigar and take out the guts and fill it with marijuana is that it the theory the yes sir that that is the theory so that was what the officer felt during the consensual pat down um we uh you know we would argue that when the evidence is reviewed in the light most favorable to United States there was reasonable suspicion to justify the additional two minutes of the investigation or the new investigation on the basis of reasonable suspicion and unless there are any further questions I'll take my seat and ask this court affirm the district court in every respect okay I correct this evidence is uncontested what the officers testified to is uncontested and they're found to be credible yes your honor okay that's just what I want to confirm okay you have anything else you want okay all right Mr. Gordon you have some time in reply you thank you your honor um two points only um first of all the record I would submit as clear on what blunt raps are to the extent that this court can find that he felt a hollowed out tube or a hollowed out cigar we don't the testimony is but he explained he felt two round blunts he called them cigars at that point right at that point yes and then he was asked to explain and at page 37 he does explain that they're like blunt wraps you might roll tobacco in uh or roll tobacco with correct I don't know what that is uh the question I don't know what that is it's like tobacco paper but it's like a cigar paper okay where do we have those in his pocket pants pocket and uh and he acknowledges that they had not been filled with marijuana right well we don't know what they are the government didn't introduce them at the suppression hearing so we don't know what they are um we know they're called blunt wraps um the second thing just to um uh to try to make clear our position is with respect to when reasonable suspicion must exist in this case if it exists it has to exist at the point that he tells Mr. Cohen have a nice day the stop is over at that point he has finished his business with respect to the stop and any further detentions in a hypothetical situation where you have a traffic stop of normal length and even with the two minutes that's normal length uh your argument is uh even once it's over though the officer brings it to a conclusion it can't be extended unless he has reasonable suspicion that's correct so in this case the government argues that there was a normal traffic stop of normal duration and during the course of that traffic stop the officer uncovered information or received information that gave him a reasonable suspicion that something was going on now if the officer tells them uh here's your uh here's your uh license you can go have a nice day it seems to me the officer at that point then they often do that and they say listen can I take a look around the car right and a lot of times the driver says okay and they open cocaine right unfortunately but in this case he said no and uh uh and so the officer says well i'm going to get a dog and the question is did he at that point have accumulatively enough evidence to give them a reasonable suspicion to justify bringing a dog or was the dog just a gratuitous fishing expedition all right uh judge neimark seems to me that's the core of the question yes and i think we're on the same page actually uh i think my my position is yes at the point that he says can i search your car okay well i'm going to bring the dog in at that point he must have reasonable suspicion he says i had it uh based on all of these correct and and i'm saying that so we have to evaluate whether that amounts to enough correct i just wanted to make you know because there there are um you know when the when the report came back that there was a warrant on him when lacey ward said i remember this guy that's all that's all afterwards yes let's assume that after he ended the guy gets out of the car he gets into his own car and starts driving away and the officer hears the report there's a warrant for that man's arrest at that point the officer could go back up stop him and arrest him correct yeah and that's that's getting into inevitable discovery what i would yeah what i would actually that wasn't discussed by both and what i would say to the court simply is this that was not brought up at the suppression hearing there was no chance to litigate that does for example if you are arrested in warsaw is the habit of the police to then impound your car there would be no need to run the dog at that point if he's got him arrested uh do they impound the car if so in this case they would have discovered before they searched it arrest them then they can uh uh the arrest uh how much they can look at in the arrest you know springford says maybe you can look right in the immediate area for reaching a gun but that gets factually intensive uh it's a safer process to get a dog and he's in the squad car by this point by the way to get a dog and when the dog alerts he says now he can look in the vehicle but this this was not litigated so um and again so um you know we would ask the court to find that in this case the factors in combination are simply too weak to support reasonable suspicion um this case would come very close to holding the nervousness by itself is sufficient the court has never said that we urge the court not to say that and we ask the court to reverse the order of the district court thank you very much gordon we'll come down and greet counsel and then go into our next case
judges: William B. Traxler Jr., Paul V. Niemeyer, Andre M. Davis